```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
 ORANE NELSON,                         :
                                       :
                         Petitioner,   :   21cv1502
                                       :   13cr242
            -v-                        :   (DLC)
                                       :
 UNITED STATES OF AMERICA,             :   OPINION AND
                                       :      ORDER
                         Respondent.   :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the petitioner:

Marshall A. Mintz
Mintz & Oppenheim LLP
260 Madison Avenue, 18th Floor
New York, NY 10016

For the respondent:

Jessica Feinstein
Jared Lenow
United States Attorney's Office, S.D.N.Y.
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

    On February 17, 2021, Orane Nelson ("Nelson") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Nelson, who was convicted at trial of murdering Jason Rivera ("Jason") and his sister Jessica Rivera ("Jessica"), contends that he was denied effective assistance of counsel

during the trial.[1]  For the following reasons, Nelson's petition is denied.

## Background

The trial evidence established the following.  From 2011 through 2013, Nelson sold crack cocaine in the Bronx.  One of Nelson's drug suppliers was Jonathan Sambula ("Sambula"), who operated a drug business with his brother Jason and trial witness Guillermo Ortiz ("Ortiz").  Sambula's drug ledger, which he kept on his cellphone, listed both Nelson's street nickname "Amaze" and the amount of money that Nelson owed Sambula.

After Sambula's arrest on January 8, 2013, Jason, with help from Ortiz, attempted to collect money owed to Sambula.  At that time, Nelson owed Sambula $1,820.  After speaking with Nelson by telephone, Jason told Ortiz that Nelson was not willing to pay the money he owed Sambula.

On January 15, Ortiz was selling drugs on a street corner, while Jason was in a car parked around the corner.  Ortiz saw Nelson walk toward him from the direction of the parked car.  When he passed Ortiz, Nelson stated that "n***ers think n***ers is pussy."  Ortiz then walked around the corner to speak with Jason, who was in the car with his girlfriend, Jasmin Guzman

---

[1] Nelson also asserted in his petition, but has since abandoned any claim, that he should be resentenced under the First Step Act of 2018.

("Guzman").  Jason told Ortiz that he had threatened to shoot Nelson if he did not pay his debt.  The two then went looking for Nelson but could not find him.

That night, Jason spoke with Nelson by telephone.  The two arranged for Jason to pick up the money Nelson owed Sambula.  Unbeknownst to Jason, however, Nelson planned to murder him.  Jennifer, a student, joined Jason on the trip so that she could buy snacks from the store.  As Jason and Jennifer left the house, Jason told his aunt, Sandy Rivera ("Sandy"), that he was going to collect money from "Amaze."  Sandy, who died in 2014, was unavailable at trial but had related this conversation to a trial witness shortly after the murders.  The last call Jason made on his cellphone was to Nelson.

Jason and Jennifer picked up Nelson and one other man around midnight and drove to Perry Ave in the Bronx.  Nelson and his accomplice sat in the back seat of the vehicle.  Nelson shot Jason and Jennifer in the back of the head, killing them both.  The vehicle then crashed.  Nelson and his accomplice fled the scene in opposite directions.

Eleven different cameras on the street and in the surrounding area captured the moment of the shooting and the two men fleeing the murder scene.  At trial, Sambula identified one of the fleeing men, who had a beard and was wearing a vest, as Nelson.  The footage also showed that Nelson's accomplice fled

3

the rear passenger side of the car as muzzle flashes from the shooting continued inside the car, confirming that Nelson, rather than his accomplice, was the shooter.

Cell site and call records for Nelson and Jason's phones provided additional evidence that Nelson committed the murders. The records revealed that their cellphones traveled to the same area just fifteen minutes before the murders and that Nelson's cellphone left the scene of the crime after the murders, following the route of the bearded man captured by the camera footage.

At Jason's funeral several days after the murders, Ortiz received a call from a man who identified himself as "A." The caller said that Ortiz "was the one who was supposed to be in the car." In the weeks and months following the murders, Nelson conducted numerous internet searches related to the murders, including a search for "double homicide bronx perry ave."

Nelson was charged in a four-count superseding indictment with conspiring to distribute 280 grams and more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; using and carrying firearms during and in relation to that conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i); and with murdering Jennifer and Jason through the use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and 2.

Nelson's trial began on February 21, 2017.  Nelson was represented by assigned counsel Lee Ginsburg and Nadjia Limani (collectively, "Defense Counsel").  On March 3, the jury returned a guilty verdict on all counts.  On June 28, this Court sentenced Nelson to a 65-year term of imprisonment.

On June 30, 2017, Nelson, represented by new counsel, appealed his conviction.  Nelson's appeal advanced five main arguments:

> (1) the Government's pretrial production of impeachment material for cooperating witness Ortiz was untimely, and therefore was effectively suppressed; (2) prosecutors engaged in misconduct during trial; (3) hearsay statements made by Sandy, a deceased aunt of both victims, should not have been received into evidence; (4) evidence of a threatening telephone call that Nelson placed to Ortiz after the murders, and a call that preceded the murders, were not properly authenticated; and (5) evidence of Jason's violent past was improper character evidence.

United States v. Nelson, 756 F. App'x 87, 88 (2d Cir. 2019) ("Second Circuit Decision"), cert. denied, 140 S. Ct. 1135 (2020).  On March 6, 2019, the Court of Appeals affirmed Nelson's conviction.  On February 24, 2020, the Supreme Court denied his petition for a writ of certiorari.

On February 17, 2021, Nelson timely filed this petition for a writ of habeas corpus.  The petition became fully submitted on June 24.

**Discussion**

Nelson contends that Defense Counsel provided ineffective assistance at trial. To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the well-established standard of Strickland v. Washington, 466 U.S. 668 (1984). That standard requires a petitioner to make two showings:

> First, he must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." Second, he must establish that he suffered prejudice -- in this context, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Fulton v. Graham, 802 F.3d 257, 265 (2d Cir. 2015) (quoting Strickland, 466 U.S. at 688, 694).

The Strickland Court clarified, however, that

> [t]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Strickland, 466 U.S. at 697.

Under the first prong of the Strickland test, "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." United States v. Melhuish, 6 F.4th 380, 393 (2d Cir. 2021)(citation omitted). "An attorney's strategic choices made after thorough investigation of law and facts relevant to

6

plausible options are virtually unchallengeable." United States v. Delva, 858 F.3d 135, 157 (2d Cir. 2017)(quoting Strickland, 466 U.S. at 690).  Defense counsel is "strongly presumed to have exercised reasonable judgment in all significant decisions." Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007)(quoting Strickland, 466 U.S. at 690).

The "reasonable probability" that the prejudice prong of the Strickland test requires is defined as "a probability sufficient to undermine confidence in the outcome." United States v. Melhuish, 6 F.4th 380, 393 (2d Cir. 2021)(citation omitted).  In making this determination, "[a] court must consider the totality of the evidence before the judge or jury." Murden, 497 F.3d at 198 (quoting Strickland, 466 U.S. at 695).

Nelson asserts that Defense Counsel provided ineffective assistance at trial in three ways.  He asserts that Defense Counsel failed to cross-examine Ortiz about his prior inconsistent statements, failed to object to the introduction of Ortiz's testimony about Nelson's threatening call to him, and failed to object to the introduction of evidence of Jason's prior violent acts.  Given the strong direct and circumstantial evidence of Nelson's guilt that was entirely independent of this evidence, Nelson has failed to show that he was prejudiced by any of these alleged deficiencies in Defense Counsel's performance.  Thus, this petition may be denied solely on the

ground that Nelson has failed to establish any reasonable probability that, but for these alleged errors by Defense Counsel, he would not have been found guilty.  Indeed, Nelson fails to engage with the existence of powerful independent evidence of his guilt.  In any event, for the reasons set forth below, Nelson has not shown that Defense Counsel's performance fell below an objective standard of reasonableness, whether these instances are examined independently or together.

1. Jason's Threat to Nelson

Nelson first argues that Defense Counsel failed to impeach Ortiz with his statement to the police in an interview on January 18, 2013, shortly after the murders.  In that statement, Ortiz did not describe a threat Jason made to Nelson on the day of the murders.  Ortiz described that threat, however, in his statement made to the police following his own arrest in July of 2013, and again at trial.[2]

The decision not to pursue this particular line of cross examination does not show that Defense Counsel was ineffective at trial.  Defense Counsel vigorously cross-examined Ortiz using other lines of attack.  Moreover, it was reasonable for Defense

---

[2] The petition's suggestion that Defense Counsel had not reviewed the 3500 material is rejected.  The record is clear that Defense Counsel did review the material.  Indeed, the Second Circuit observed that "defense counsel's comments during trial made clear that he had reviewed the Section 3500 material."  Second Circuit Decision, 756 F. App'x at 88.

8

Counsel to decline to confront Ortiz with his January statements to the police.  There were other aspects of the January interview that would have done damage to Nelson's defense.  For example, in the January interview, when asked who would have wanted Jason dead, Ortiz explained that the day before Jason's murder Jason was pursuing a debt that Nelson owed Sambula.

In a related argument, Nelson contends that Defense Counsel failed to take advantage of the fact that a statement by Jason's girlfriend Guzman to investigators also contradicted Ortiz's trial testimony about the threat Jason made to Nelson on the day of the murders.  The apparent inconsistencies between Guzman and Ortiz included whether she was in the car with Jason, whether she recalled a confrontation between Jason and Nelson, and whether she saw Ortiz on January 15, 2013.  To take advantage of the divergence in the statements made by Guzman and Ortiz, Nelson would have had to call Guzman as a defense witness at trial.  That decision would not have been without risks.  Guzman's trial testimony may have revealed that she had a poor recollection of that day's events or that she had been less than forthcoming when interviewed by law enforcement officers, among other possibilities.  It was also reasonable for Defense Counsel to decide not to expose the jury to what would have been Guzman's emotionally charged testimony about the murder of her boyfriend.

9

2. Nelson's Telephone Call to Ortiz

Nelson next argues that Defense Counsel was ineffective for failing to object to Ortiz's testimony about a call he received while he was at Jason's wake.[3] The caller said that Ortiz was supposed to be the one in the car. Ortiz explained that he did not recognize the voice of the caller but that the caller said that "This is A," meaning Amaze.[4] Nelson contends the testimony was both irrelevant and prejudicial. He adds that Defense Counsel should have asked for a limiting instruction.

Nelson has not shown any ground for an objection by his counsel nor explained what limiting instruction Defense Counsel should have sought. The content and context of the call supported a finding that Nelson was the caller. As such, the call was properly admitted as an admission and was relevant to the issues before the jury. Nelson has failed to show any deficiency in this regard by Defense Counsel.

3. Jason's History of Violence

Finally, Nelson argues that Defense Counsel should have objected to testimony from Sambula and Ortiz that Jason had

---

[3] While Nelson makes a similar argument about a second call, he emphasizes the call Ortiz received at the wake.

[4] In response to the defendant's claim on appeal that the call was not properly authenticated, the Court of Appeals observed that there was no plain error regarding authentication. Second Circuit Decision, 756 F. App'x at 90.

10

acted violently or aggressively on prior occasions and that they considered him aggressive.  Defense Counsel's decision not to object to the introduction of evidence of Jason's violent character and prior bad acts was reasonable.  Defense Counsel chose instead to use that evidence to assist the defense.  That decision was a strategic choice properly left to the judgment of counsel.

## Conclusion

Nelson's habeas petition of February 17, 2021 is denied.  Because he has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c); Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990) (per curiam).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court is directed to close the case.

Dated:    New York, New York
          September 8, 2021

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　DENISE COTE
　　　　　　　　　　　　　　United States District Judge